## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **VICTOR LAMONT JORDAN SR.,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **3:24cv227 (VAB)** |
| | : | |
| **DEPARTMENT OF CORRECTIONS,** | : | |
| **et al.,** | : | |
| **Defendants.** | : | |

**INITIAL REVIEW ORDER**

Plaintiff Victor Jordan, a sentenced inmate housed at Cheshire Correctional Institution

("Cheshire") in the custody of the Connecticut Department of Correction ("DOC"), filed this

civil rights Complaint under 42 U.S.C. § 1983.[1] Compl., ECF No. 1.

On initial review, the Court dismissed Mr. Jordan's original Complaint for failure to

comply with Federal Rule of Civil Procedure 8. ECF No. 13. The Court also noted that Mr.

Jordan's Complaint contained misjoined claims arising from unrelated events that failed to

comply with Federal Rule of Civil Procedure 20(a). The Court afforded Mr. Jordan an

opportunity to file an Amended Complaint and instructed him to assert only claims arising from

a single occurrence and name as Defendants only those persons involved in that claim. *Id.* The

Court explained that he must allege concise facts in the body of any complaint under 42 U.S.C. §

1983 to describe how each Defendant is liable for violation of his constitutional or statutory

rights. *Id.*

---

[1] Information on the Department of Correction ("DOC") website shows that Mr. Jordan was sentenced on December 4, 2008, to term that has not yet expired. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=339978 (last visited March 19, 2024). *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425 (KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information). http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=165080.

Mr. Jordan has now filed his Amended Complaint asserting violation of his rights under the United States Constitution and the Americans with Disabilities ("ADA") and Rehabilitation Act ("RA") against several DOC entities and officials and DOC employees during his custody at Garner Correctional Institution ("Garner"). *See* Am. Compl. at 5, ECF No. 17.

He asserts his claims against the DOC, Administrative and Medical/Mental Health Department, and Security Department (custody); high ranking DOC officials Commissioner Quiros, Deputy Commissioners William Mulligan and David Maiga, District Administrator Rodriguez, and Director of Mental Health Department Dr. Kocienda; and DOC employees who work at Garner, Warden Washington, Yolonda Olivares, Dr. Gerald Valletta, M. Greene, Colleen Gallagher, G. Lee, Dr. Burns, Captain Hurdle, LPC Caillin, and LPRN Caroline Sanders. *Id.* at 3, 33–40.[2] Mr. Jordan asserts his claims against these Defendants in their individual and official capacities.

For the following reasons, the case shall proceed on Mr. Jordan's individual capacity claims for damages for:

(1) First Amendment retaliation against Yolanda Olivares in her individual capacity;

(2) Eighth Amendment deliberate indifference to Mr. Jordan's medical needs against Olivares and Dr. Gerald Valletta in their individual capacities; and,

(3) Eighth Amendment deliberate indifference to Mr. Jordan's mental health needs against Dr. Burns and LPC Caillin in their individual capacities.

The Court **SEVERS** and **DISMISSES** Mr. Jordan's Eighth Amendment claims of

---

[2] Rule 10 of the Federal Rules of Civil Procedure states: "The title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). Thus, the Court only considers whether Mr. Jordan has alleged plausible claims against the individuals named in the case caption as well as the parties listed under his section entitled "Parties." *See* Am. Compl. at 33–40.

2

deliberate indifference to his conditions of confinement against custody staff and his Eighth

Amendment and ADA/RA claims based on failure to modify or construct DOC facilities to

provide for his safe confinement and to accommodate his mental health or other disabilities. *See*

Fed. R. Civ. P. 21. Mr. Jordan may pursue such claims in separate actions.

All other claims and defendants are **DISMISSED** from this action with prejudice.

## I.    BACKGROUND

Mr. Jordan's Amended Complaint consists of sixty-six pages of allegations and asserts

claims for mistreatment due to medical and mental health deprivations, custody issues,

retaliation, and violation of the Administrative Directives. Mr. Jordan alleges facts about his

efforts to exhaust his administrative remedies and obtain medical care for his back and shoulder

pain (including provision for appropriate bedding), kidney, and mental health issues. Am.

Compl. at 8–30. As Mr. Jordan's factual allegations are so numerous and primarily detail his

administrative remedy filings, the Court does not provide a specific recitation of the factual

allegations. Instead, the Court briefly discusses his five asserted causes of action and addresses

the factual allegations in its discussion of Plaintiff's claims.[3]

---

[3]    Mr. Jordan refers to Fourth and Fourteenth Amendment violations. Am. Compl at 37. But Mr. Jordan has
not alleged facts to support Fourteenth or Fourth Amendment claims. *See, e.g.*, *Monger v. Conn. Dep't of Transp.*,
No. 3:17-CV-00205 (JCH), 2017 WL 3996393, at *5 (D. Conn. Sept. 11, 2017) ("Merely mentioning the state
constitution, however, is not sufficient to state a claim upon which relief can be based."); *see also Burke v. Lamont*,
No. 3:22-CV-475 (OAW), 2022 WL 3997549, at *14 (D. Conn. Sept. 1, 2022) ("Plaintiff cannot mention a claim
without providing factual support for that claim.").
        Mr. Jordan's claims of medical and mental health indifference are governed by the Eighth Amendment. *See*
*Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). "[W]here a particular Amendment provides an explicit textual
source of constitutional protection against a particular sort of government behavior, that Amendment, not the more
generalized notion of [Fourteenth Amendment] substantive due process, must be the guide for analyzing these
claims." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998).
        The Fourth Amendment safeguards privacy and personal security only against searches or seizures, and not
conduct outside of a governmental investigation of a violation of criminal law or other statutory or regulatory law.
*New Jersey v. T.L.O.*, 469 U.S. 325, 335 (1985); *Poe v. Leonard*, 282 F.3d 123, 136 (2d Cir. 2002). Thus, Mr.
Jordan's allegations do not suggest he asserts violations under the Fourth Amendment.
        Nor has he alleged facts to support a claim that any individual Defendant deprived him of his right to equal

In his first cause of action, Mr. Jordan asserts violations of the Eighth Amendment and the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA"). *Id.* at 47. He claims that the ADA and RA violations "stem from multiple incidents and multiple facilit[ie]s and Defendants." *Id.* at 41. He refers to denial of his ADA and RA rights on June 27, 2022. *Id.* at 43, and DOC agents or employee who made disparaging comments and various conditions—depression, back pain, stenosis, chronic chest pain—that did not receive treatment and thereby caused him "to decompose mentally." *Id.* at 45–47. He also asserts that he was subjected to unsanitary conditions. *Id.* at 46.

In his second cause of action, Mr. Jordan asserts violations of the ADA, RA, and First, Fourth, Eighth and Fourteenth Amendments. *Id.* at 47. He claims that Defendants Olivares, Gallagher, Green, and the DOC Medical Department acted to delay his attempts to obtain treatment through his administrative remedies. *Id.* at 47. He claims that Olivares would not process his administrative remedies because she was believed all he wanted to do was file lawsuits, and that Gallagher, Green, and Sanders denied his right to medical treatment and freedom of speech by rejecting his grievances. *Id.* at 49.

Mr. Jordan's third cause of action is difficult to construe. He appears to assert violations of his ADA and RA and First, Eighth and Fourteenth Amendment rights against DOC, its medical, mental health and custody departments, and Quiros, Mulligan, Maiga, Washington, Gallagher,

---

protection under the Fourteenth Amendment due to any "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (citation omitted). In addition, his alleged facts do not support a "class of one" equal protection claim based on being treated differently from others similarly situated without a rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). To succeed on a class of one claim, a plaintiff must demonstrate the existence of a person who is "*prima facie* identical" to him and who was treated differently. *Conquistador v. Corcella*, No. 3:22-cv-00992, 2023 WL 3006806, at*2 (D. Conn. 2023). The facts alleged do not support an inference of such disparate treatment without a rational basis.

Lee, Rodriguez, Olivares, and Kocienda for failure to provide reasonable accommodation and humane conditions for "proper care and safety and security" for DOC's "vulnerable and disabled/handicap population." *Id.* at 53–55.

In his fourth cause of action, Mr. Jordan claims deliberate indifference to his medical needs in violation of his Eighth Amendment rights against Olivares, Dr. Valletta, Lee, Sanders, and Gallagher. *Id.* at 57–61.

Mr. Jordan's fifth cause of action concerns his mental health treatment. He alleges violation of the Eighth Amendment and his disability rights under the ADA and RA. *Id.* at 62. He claims that Defendants Dr. Burns and L.P.C. Caillin, and the Mental Health Department have provided him with inadequate health care and have denied him the "reasonable accommodation and health alternative of mental health care." *Id.* at 63–64.

## II.     STANDARD OF REVIEW

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

## II.     DISCUSSION

### A.     Failure to Comply with Court's Initial Review Order

As previously explained on prior initial review, a complaint must "give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of*

*Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order). Rule 8 of the Federal Rules of Civil Procedure requires that a complaint's claim for relief must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1)–(2). Rule 8 provides further that that "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

Plaintiff's Amended Complaint is neither short nor plain. And his allegations are not "simple, concise, and direct." His allegations are unnecessarily long and confusing and thereby unjustifiably burden both the court and the parties to determine what facts, if any, support his claims. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (noting Rule 8 requirement statement be "short" "because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage"). Nonetheless, the Court will consider whether Plaintiff has alleged plausible First Amendment retaliation, deprivation of court access, Eighth Amendment deliberate indifference to his mental health and medical needs, ADA and RA violation based on lack of medical and mental health care, conspiracy, and his violation of administrative remedy process.

Plaintiff has also failed to comply with the Court's initial review order because he includes claims that are unrelated and therefore misjoined in this single action. With respect to the first requirement of Rule 20(a), what constitutes the same "transaction" or "occurrence" is approached on a case-by-case basis. *Dixon v. Scott Fetzer Co.*, 317 F.R.D. 329, 331 (D. Conn. 2016). Whether claims arise out of the same transaction depends on the logical relationship between the claims and whether the "essential facts" of the claims "are so logically connected

that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978). The same transaction requirement "means that there must be some allegation that the joined defendants conspired or acted jointly." *Arista Records LLC v. Does 1–4*, 589 F. Supp. 2d 151, 154 (D. Conn. 2008) (internal quotation marks omitted). The second requirement—that a question of law or fact common to all defendants will arise in the action—is met where "the court finds that there is 'substantial' overlap in questions of law or fact across the claims." *Ardolf v. Weber*, 332 F.R.D. 467, 479 (S.D.N.Y. 2019).

As noted, Plaintiff's claims in this action are not entirely clear. But to the extent Plaintiff's Amended Complaint brings Eighth Amendment claims against custody staff arising from their indifference to his inadequate bedding or other conditions, such claims do not arise from the same transactions and occurrences as his predominant claims arising from indifference to his medical or mental health care needs by medical professionals. Likewise, Plaintiff's third cause of action—that DOC violated his disability and Eighth Amendment rights by failing to modify or construct its facilities to provide for his safe confinement and to accommodate his mental health or other disabilities—is not related to his claims arising from his specific provision by individual defendants for medical or mental health care. Where claims arise from different circumstances, involve different parties, and would require separate analyses, they are not logically related. *See, e.g.*, *Sanchez v. O'Connell*, No. 08cv706 (JBA), 2010 WL 7862797, at *2 (D. Conn. Sept. 27, 2010).

Accordingly, as it would not serve judicial economy or fairness to keep all claims in one single action, the Court will sever all claims related to Plaintiff's conditions of confinement or

7

construction of the DOC facilities against custody staff as misjoined. *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").

### B.    42 U.S.C. § 1983

42 U.S.C. § 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

As a preliminary matter, Mr. Jordan cannot proceed under section 1983 against the DOC or its departmental unit—such as the Medical Department or Mental Health Department— because state agency departments are not considered to be a person subject to suit under 42 U.S.C. § 1983. *See Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998) ("Neither a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983.").

### C.    Supervisory Defendants

For any claim seeking monetary damages from a Defendant under section 1983, Mr. Jordan must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of

damages under § 1983."). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff has named several supervisory officials: Commissioner Quiros, Deputy Commissioners William Mulligan and David Maiga, District Administrator Rodriguez, Garner Warden Washington, and Mental Health Department Director Dr. Kocienda. The fact that a prison official has a supervisory title or role at a prison does not automatically mean that the official was personally involved with or is liable for any misconduct by lower-level officers. *Raynor v. Maldonado*, No. 3:24-CV-1221 (JAM), 2024 WL 4533748, at *4 (D. Conn. Oct. 21, 2024). In addition, courts generally hold that correspondence from a plaintiff to a supervisory official is not sufficient to establish the official's personal involvement. *See, e.g.*, *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) ("Sealey's letters and Coughlin's response do not demonstrate the requisite personal involvement on Coughlin's part[.]"); *Bonie v. Annucci*, No. 20-CV-640 (KMK), 2023 WL 2711349, at *6 (S.D.N.Y. Mar. 30, 2023) ("The receipt of letters or grievances, by itself, does not amount to personal involvement."); *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability." (citation omitted)); *Alvarado v. Westchester Cnty.*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) (concluding a defendant's mere receipt of a letter or grievance, without personally investigating or acting thereon, is insufficient to establish personal involvement.); *see also Crespo v. Hurwitz*, No. 17CV6329RRMPK, 2020 WL 7021658, at *7 (E.D.N.Y. Nov. 30, 2020) ( "[G]eneralized awareness of a plaintiff's dissatisfaction with conditions of confinement is

not sufficient to establish personal involvement for particular wrong." (citing section 1983 case *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994))).

In *Tangreti*, the Second Circuit explained that "there is no special rule for supervisory liability," and "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 983 F.3d at 618.

Accordingly, because Plaintiff has not alleged any facts to suggest that these supervisory defendants had any direct involvement in any violation of Plaintiff constitutional rights, Plaintiff has failed to state plausible grounds for relief against them, and the claims against them will be dismissed.

### D.    The Conspiracy Claim

Plaintiff alleges conspiracies between the Defendants under Section 1985. "It is well settled that claims of conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Brook v. Ruotolo*, No. 23-1339, 2024 WL 3912831, at *3 (2d Cir. Aug. 23, 2024) (citing *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011)); *see also Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 940 (E.D.N.Y. 1999) ("[Plaintiff must] allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy.").

For a conspiracy claim under section 1985, Plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2013) (internal quotation marks and citations omitted). Section 1985(1) relates to conspiracies to prevent federal

officials from performing their duties. Section 1985(2) and 1985(3) provide causes of action based on conspiracies intending to violate a plaintiff's civil rights. *Mills v. Noonan*, No. 1:16-CV-00984-MAT, 2017 WL 1353479, at *10 (W.D.N.Y. Apr. 13, 2017).[4]

Notably, Plaintiff has not plausibly alleged an essential element necessary for his claims of conspiracy under these federal statutes to proceed. To state a viable conspiracy claim, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2013) (internal quotation marks and citations omitted). Plaintiff's Amended Complaint contains no nonconclusory allegations within his knowledge to raise a plausible inference that Defendants conspired to violate his constitutional rights. *See Pulizotto v. McMahon*, 406 F. Supp. 3d 277, 293 (S.D.N.Y. 2019) (requiring plaintiff to "allege facts beyond conclusory, vague, or general allegations to assert the existence of an agreement to inflict constitutional injury"); *Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 940 (E.D.N.Y. 1999) (noting conspiracy allegations can be neither vague, nor conclusory, and must "allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy"); *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002). (finding

---

[4] Specifically, section 1985(2) concerns conspiracies intending to deter "any party or witness" from participating in state or federal proceedings or to obstruct justice with intent to deny equal protection of the law; and 1985(3) applies to conspiracies to deprive a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws, and precedent makes clear that the conspiracy must be motivated by a "racial, or perhaps otherwise class-based invidiously discriminatory animus." *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015).

insufficient "conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights").

Accordingly, Plaintiff's claims of conspiracy to violate his civil rights are not plausible and will be dismissed.

### E.    The Interference with Grievance Procedure Claim

Mr. Jordan's Amended Complaint complains about the handling of his administrative remedies. To the extent he asserts interference with, or mishandling of, his administrative remedies, Plaintiff does not state a claim for liability under 42 U.S.C. § 1983. Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or even to have a grievance processed properly. *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (finding that claim relating to grievance procedures "confuses a state-created procedural entitlement with a constitutional right" and "neither state policies nor 'state statutes . . . create federally protected due process entitlements to specific state-mandated procedures'").

Accordingly, any section 1983 claims premised on violation of the DOC grievance procedure will be dismissed as not plausible.

The Court considers, however, whether Plaintiff may proceed on First Amendment claims of retaliation or deprivation of his constitutional right to court access.

### 1.    A First Amendment Retaliation Claim

To plead a retaliation claim, an inmate must plausibly allege: (1) that he engaged in protected speech or conduct; (2) that the defendant took adverse action against the plaintiff, and (3) that the adverse action was the result of a retaliatory motive, i.e., that there was a causal connection between the protected conduct and the adverse action. *See Dolan v. Connolly*, 794

F.3d 290, 294 (2d Cir. 2015). The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Id.* 794 F.3d at 295. Thus, such claims must be "supported by specific and detailed factual allegations," and cannot be stated "in wholly conclusory terms." *Id.* (citation omitted).

Here, Plaintiff alleges that Olivares advised that she would not process his grievances due to his intent to file a law suit.

Accordingly, for initial pleading purposes, Plaintiff has adequately alleged a plausible claim of First Amendment retaliation against Olivares in her individual capacity, and this claim will proceed for now.

## 2.    The Deprivation of Court Access Claim

The First Amendment (in conjunction with other constitutional provisions) guarantees prisoners "the right of access to the courts." *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Morello v. Hames*, 810 F.3d 344, 346 (2d Cir. 1987). Thus, prison officials are prohibited from "actively interfering with inmate's attempts to prepare legal documents or file them[.]" *Id.* (internal citation omitted). But, to prevail in a § 1983 access to the court claim, an inmate-plaintiff must demonstrate that a prison official "actually interfered with his access to the courts or prejudiced an existing action." *Tafari v. McCarthy*, 714 F. Supp. 2d 317 (N.D.N.Y. 2010). For denial of access to the courts, an inmate is required to demonstrate that he suffered an actual injury as a result of the conduct of the defendants. *Lewis*, 518 U.S. at 351–53.

To establish an actual injury, an inmate must allege facts showing that the defendant took

13

or was responsible for actions that hindered his efforts to pursue a "nonfrivolous" legal claim. *Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002) ("Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost ... plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim" that he sought to pursue or seeks to pursue in court[.]" (citation omitted)); *see Lewis*, 518 U.S. at 353 (suggesting that the injury requirement of an access to courts claim is satisfied if an "inmate could demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." (footnotes omitted)). Here, Mr. Jordan's allegations fail to identify a nonfrivolous claim that was prejudiced as a result of any interference with his access to the court. *See Chaney v. Koupash*, No. 04-cv-136 (lEK/DRH), 2008 WL 5423419, at *11 (N.D.N.Y. Dec. 30, 2008) (dismissing access to the court claim, in part, because inmate-plaintiffs "failed to state how defendants' actions contributed to plaintiffs' alleged damages or which demonstrable injuries plaintiffs suffered").

Further, even if Mr. Jordan were unable to file a grievance to satisfy the exhaustion requirement under the Prison Litigation Reform Act, Mr. Jordan can still seek redress for his claims in federal court as his administrative remedies would be considered unavailable. *See* 42 U.S. § 1997e(a) (requiring prisoners to exhaust administrative remedies only to the extent that the remedies are available); *Baltas v. Erfe*, No. 3:19CV1820 (MPS), 2020 WL 1915017, at *33 (D. Conn. Apr. 20, 2020); *Baltas v. Rivera*, No. 3:19-CV-1043 (MPS), 2019 WL 3944435, at *10–11 (D. Conn. Aug. 21, 2019) ("If prison officials 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation' the grievance procedure would be unavailable and the inmate would be able to proceed to federal court." (citation omitted)).

Accordingly, to the extent Mr. Jordan asserts such claim, it will be dismissed as not plausible.

**F.      The Eighth Amendment Deliberate Indifference to Medical and Mental Health Claim**

The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII.

The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to the serious medical needs of a sentenced prisoner. *See Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The prisoner must show that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that the defendants acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)). It is not enough to allege medical malpractice unless the malpractice involves culpable recklessness—actions that evince a conscious disregard of a substantial risk of serious harm. *See Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

To be "sufficiently serious," the deprivation of medical care must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hill*, 657 F.3d at 122. This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280. Factors to consider include "[t]he existence of an injury that a reasonable doctor or patient would

find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702.

The prisoner must allege facts to suggest that the defendants acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. In other words, Mr. Jordan must allege that the defendants were aware of a substantial risk that he would be seriously harmed if they did not act. *See, e.g.*, *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012) (*per curiam*); *Collazo*, 656 F.3d at 135. But "[o]fficials need only be aware of the risk of harm, not intend harm. And awareness may be proven from the very fact that the risk was obvious." *Spavone*, 719 F.3d at 138.

## 1. Medical Needs

Mr. Jordan asserts that Defendants Olivares, Dr. Valletta, Gallagher, Sanders, Greene and Lee are liable for Eighth Amendment violation based on denial or delay of his medical care.

Mr. Jordan's allegations suggest that Olivares refused to process his medical grievance for improper reasons despite her plausible awareness of his serious back pain and spinal issues. *See* Am. Compl. at 17, 57–58.

His Amended Complaint also suggests claims of medical indifference against Dr. Valletta, who allegedly examined him, reviewed his X-rays, prescribed medication, and referred him to an orthopedist, but also ignored his request for further relief due to increased pain while he was housed in segregation. *See* Am. Compl. at 21–22, 23.

As to the other Defendants, Sanders, Greene, Lee and Gallagher, and his disagreement with them about their responses regarding his administrative remedies, *id.* at 58–61, or other correspondence, *id.* at 13, Mr. Jordan has not alleged sufficient facts to support his claims that these defendants acted with deliberate indifference to his serious need for medical treatment.

Accordingly, Mr. Jordan may proceed, for now, with his Eighth Amendment medical indifference claims against Yolanda Oliveras and Dr. Valletta in their individual capacities, but the claims against Sanders, Greene, Lee, and Gallagher will be dismissed.

### 2.    The Mental Health Claim

The Court construes Mr. Jordan's fifth cause of action as alleging Eighth Amendment indifference to his mental health needs against Dr. Burns and LPC Caillin. *See* Am. Compl. at 62–64. Mr. Jordan alleges that he had been taken to the infirmary and placed on Behavior Observation Status ("BOS"), after he expressed an intention to harm himself. *Id.* at ¶ 27. He asserts that his mental health condition was exacerbated by his BOS status, where he could only wear a gown and had to endure "extreme hostile conditions." *Id.* at 28. Although Mr. Jordan's allegations are thin, Mr. Jordan indicates that Defendants Burns and Caillin failed to provide him with adequate mental health care and acted with indifference to the negative effects of his BOS placement on his mental health. *Id.* at 27, 63–64.

Accordingly, the Court will permit him to proceed, for now, with his claims of Eighth Amendment violation for indifference to his mental health needs against Defendants Burns and Caillin in their individual capacities.

### G.    The ADA/RA Violation Claim

The standards under Title II of the ADA and §504 of the RA "are generally the same."

*Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016).[5] The ADA and the RA

both apply to state prisons and prisoners. *Wright*, 831 F.3d at 72.[6]

   To establish a prima facie violation under Title II of the ADA or the Rehabilitation Act, a

plaintiff must show: "that 1) he is a qualified individual with a disability; 2) [defendants are]

entit[ies] subject to the acts; and 3) he was denied the opportunity to participate in or benefit

from [defendants'] services, programs, or activities or [defendants] otherwise discriminated

against him by reason of his disability." *Wright*, 831 F.3d at 72. There are "three available

theories" of discrimination that can be used to establish the third prong of an ADA and

Rehabilitation Act claim: "(1) intentional discrimination (disparate treatment); (2) disparate

impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord,* 591 F.3d 37, 43

(2d Cir. 2009).

   Neither the ADA nor the RA "applies to claims regarding the adequacy or substance of

services provided by correctional departments or provides a remedy for medical malpractice."

*Reese v. Breton*, No. 3:18CV01465 (VAB), 2020 WL 998732, at *5 (D. Conn. Mar. 2, 2020).

---

[5] The only difference between the ADA and Rehabilitation Act is that the Rehabilitation Act applies to entities receiving federal financial assistance while Title II of the ADA applies to all public entities, a distinction not relevant here. *See Messier v. Southbury Training Sch.*, 562 F. Supp. 2d 294, 320 & n.13 (D. Conn. 2008); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (finding it proper to consider such claims together). The "distinctions between the statutes are not implicated in this case," so "'we treat claims under the two statutes identically.'" *Wright*, 831 F.3d at 72 (quoting *Henrietta D*., 331 F.3d at 272).

[6] "Neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001). As to official capacity claims, the Court is aware that it is presently unsettled in the Second Circuit whether a plaintiff may assert a Title II ADA damages claim against a state actor in his or her official capacity, and, if so, under what circumstances such a claim can be maintained. *See Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193–95 (2d Cir. 2015) (recognizing uncertainty, after the decision in *United States v. Georgia*, 546 U.S. 151 (2006), about the extent to which Congress validly abrogated state sovereign immunity under Title II and about the continuing validity of the Second Circuit's decision in *Garcia*, 280 F.3d at 111–12, on this issue).

Thus, "[c]ourts routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." *Elbert v. New York State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010). Although difficult to discern, Mr. Jordan's allegations appear to be directed at the inadequacy or denial of medical or mental health care. But he does not allege facts to support an inference he is being treated differently because of a disability.

Accordingly, in the absence of "well-pleaded factual allegations" that "plausibly give rise to an entitlement to relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), these claims will be dismissed.

### H.    Official Capacity Relief

To the extent Mr. Jordan asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Mr. Jordan may only proceed for injunctive or declaratory relief against a defendant in his or her official capacity to the extent he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Mr. Jordan is proceeding on violations that occurred in the past against employees at Garner, where he is no longer housed. Accordingly, the Court concludes that Mr. Jordan has not stated any plausible claim for official capacity relief. *See Salahuddin*, 467 F.3d at 272 (an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility).

Accordingly, Mr. Jordan may not proceed against any of the Defendants for injunctive or

declaratory relief, and these official capacity claims will be dismissed.

## I.    Leave to Amend

Generally, a "*pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (quoting Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010)) (cleaned up). Leave to amend may be denied, however, "if the plaintiff has already been given an opportunity to amend but has failed to cure the complaints deficiencies." *Ward v. City of New York*, No. 17-cv-3710, 2017 WL 6409021, at *4 (S.D.N.Y. Sept. 18, 2017), *aff'd* 777 Fed. Appx. 540 (2d Cir. 2019).

Mr. Jordan has already amended his Complaint once and failed to cure defects. In the Initial Review Order, the Court directed Mr. Jordan to "assert only claims arising from a single occurrence" and "allege concise facts in the body of any complaint." Initial Review Order, ECF No. 13 (Aug. 23, 2024). His Amended Complaint neither severed his misjoined claims, nor provided sufficient detail or clarity to support properly joined claims, despite its extensive length.

Where previous pleadings have failed to cure defects and "remain prolix and unintelligible," a district court can properly deny leave to amend. *Salahuddin*, 861 F.2d at 42; *see, e.g.*, *Cook v. Dewitt*, No. 19 Civ. 2780 (NSR), 2022 WL 580774, at *4 (S.D.N.Y. Feb. 25, 2022) ("Here, the Court previously detailed the deficiencies in his original Complaint and provided *pro se* Plaintiff leave to amend. However, his Amended Complaint fails to address these exact same deficiencies. Therefore, *pro se* Plaintiff's claims must be dismissed with prejudice without leave to replead."); *Corines v. Cnty. Of Westchester*, No. 22-cv-5179 (KMK),

2024 WL 1257093, at *11 (S.D.N.Y. March 25, 2024) (denying leave to amend when the Amended Complaint "failed to address th[e] exact same deficiencies" the Court had previously identified" (internal citation omitted)); *Strunk v. U.S. House of Representatives*, 68 Fed. Appx. 233, 235 (2d Cir. 2003) (affirming denial of leave to amend after district court "instructed [plaintiff] how to cure the pleading defects" and plaintiff failed to cure them in amended pleadings).

Accordingly, the Court denies leave to amend the Complaint a second time.

### III.    ORDERS

For the foregoing reasons, the Court enters the following orders:

The case shall proceed on Mr. Jordan's individual capacity claims for damages for:

(1) First Amendment retaliation against Yolanda Olivares in her individual capacity;

(2) Eighth Amendment deliberate indifference to Mr. Jordan's medical needs against Olivares and Dr. Gerald Valletta in their individual capacities; and,

(3) Eighth Amendment deliberate indifference to Mr. Jordan's mental health needs against Dr. Burns and LPC Caillin in their individual capacities.

The Court **SEVERS** and **DISMISSES** Mr. Jordan's Eighth Amendment claims of deliberate indifference to his conditions of confinement against custody staff and his Eighth Amendment and ADA/RA claims based on failure to modify or construct DOC facilities to provide for his safe confinement and to accommodate his mental health or other disabilities. *See* Fed. R. Civ. P 21. Mr. Jordan may pursue such claims in separate actions.

All other claims and defendants are **DISMISSED** from this action with prejudice.

The Court enters the following additional orders:

21

(1)  The Clerk of Court shall contact the Department of Correction Office of Legal Affairs to ascertain current service addresses for Defendants Olivares, Gerald, Valletta, Burns, and Caillin and mail a waiver of service of process request packet containing the Amended Complaint and this Order to each defendant at the address by **January 17, 2025**. If any Defendant fails to return the waiver request, the Clerk of Court shall arrange for in-person service by the U.S. Marshals Service on the Defendant in his or her individual capacity and the Defendant shall be required to pay the cost of such service.

(2) The Clerk of Court shall send Mr. Jordan a copy of this Ruling and Order.

(3) The Clerk of Court shall send a courtesy copy of the Amended Complaint and this Ruling and Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) Defendants shall file their response to the complaint, either an Answer or motion to dismiss, by **March 28, 2025**. If they choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5) Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed by **August 29, 2025**. Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed by **October 31, 2025**.

(7) If Mr. Jordan changes his address at any time during the litigation of this case, Local Rule 83.1(c) provides that he **MUST** notify the Court. Failure to do so can

result in the dismissal of the case. Mr. Jordan must give notice of a new address even if he is incarcerated. Mr. Jordan should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Jordan has more than one pending case, he should indicate all the case numbers in the notification of change of address. Mr. Jordan should also notify Defendants or counsel for Defendants of his new address.

(8) Mr. Jordan shall utilize the Prisoner E-filing Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on Defendants' counsel by regular mail.

(9) The Clerk of Court shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Mr. Jordan

**SO ORDERED** at New Haven, Connecticut, this 13th day of December, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE