**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| VICTOR L. JORDAN, SR., <br>     *Plaintiff*, <br><br> v. <br><br> DEPARTMENT OF CORRECTIONS *et al.*, <br>     *Defendants*. | No. 3:24-cv-227 (VAB) |

**RULING AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND MOTION TO COMPEL**

Victor Jordan ("Plaintiff") has sued Ms. Laura Olivares, Dr. Gerald Valletta, and Dr. Craig Burns (collectively "Defendants") in their individual capacities alleging (1) First Amendment retaliation against Ms. Olivares; (2) Eighth Amendment deliberate indifference to Mr. Jordan's medical needs against Ms. Olivares and Dr. Valletta; and (3) Eighth Amendment deliberate indifference to Mr. Jordan's mental health needs against Dr. Burns.[1]

Mr. Jordan and the Defendants have filed cross summary judgment motions. Pl.'s Mot. for Summ. J., ECF No. 45 ("Pl.'s Mot."); Defts.' Cross Mot. for Summ. J., ECF No. 57 ("Defts.' Mot."). The Defendants have also filed a motion to compel Mr. Jordan's response to discovery requests and attendance at a deposition. Mot. to Compel, ECF No. 41.

For the following reasons, the Defendants' motion for summary judgment is **GRANTED in part and DENIED in part**, and Mr. Jordan's motion for summary judgment is **DENIED**. The Defendants' motion to compel is **GRANTED**.

---

[1] Though Mr. Jordan asserts the claim for Eighth Amendment deliberate indifference to his mental health needs against LPC Caillin, LPC Caillin has not been served in this matter. As a result of having not been served, any and all claims brought against LPC Caillin are **DISMISSED**. *See Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *see also Nature's First Inc. v. Nature's First L., Inc.*, 436 F. Supp. 2d 368, 372 (D. Conn. 2006) ("A plaintiff must effectuate valid service of process before the district court can assert personal jurisdiction over a defendant.").

The Defendants' motion for summary judgment is granted with respect to Mr. Jordan's First Amendment retaliation claim against Ms. Olivares and his Eighth Amendment claim against Ms. Olivares and Dr. Valletta. With respect to Mr. Jordan's remaining Eighth Amendment claim against Dr. Burns, the Defendants' motion is denied without prejudice to renewal following Mr. Jordan's testimony and the close of discovery.

The Court also grants the Defendants' motion to compel and orders that Mr. Jordan respond to the Defendants' production request and sit for a deposition by **June 26, 2026**. Failure to comply with these discovery obligations may result in the dismissal of this case.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

Mr. Jordan is a *pro se* plaintiff who is currently housed at the Cheshire Correctional Institution ("Cheshire CI"), where he has been since November 3, 2023. Pl.'s Statement of Material Facts ¶ 1, ECF No. 45 ("Pl.'s SMF"). Previously, and during the period of time relevant to this action, Mr. Jordan resided at the Corrigan Radgowski Correctional Center from May 23, 2023, to November 3, 2023, the Garner Correctional Institution ("Garner CI") from June 27, 2022, to May 23, 2023, and the Cheshire CI from March 31, 2022, to June 27, 2022. *Id.*

From 2022 to 2023, Ms. Olivares served as the Health Services Administrative Remedies Coordinator at Garner CI, and was in charge of collecting health services administrative remedy ("HSAR") forms and determining their compliance with the filing process. Defts.' Statement of Material Facts ¶¶ 11-13, ECF No. 57-3 ("Defts.' SMF"). Forms that do not comply with the filing requirements set forth in Administrative Directive 8.9 ("A.D. 8.9") are "rejected" and

inmates are notified. *Id.* ¶¶ 15-16. If a form is rejected, DOC does not investigate the complaint and no appeal can be taken from the form. *Id.* ¶¶ 17-18.

Mr. Jordan allegedly has a documented history of back problems starting in 2008. Pl.'s SMF ¶ 3. According to the Department of Corrections ("DOC") database, Mr. Jordan filed several HSAR forms regarding this pain while he was housed at Garner CI between June 2022 and May 2023. Defts.' SMF ¶¶ 6-9; Pl.'s SMF ¶¶ 2, 4, 12-14. All of Mr. Jordan's HSARs were rejected by Ms. Olivares and were therefore neither investigated nor appealable. *Id.* ¶¶ 9, 20; Pl.'s SMF ¶¶ 16-27. On January 10, 2023, Mr. Jordan engaged in a verbal disagreement with Ms. Olivares, who allegedly stated she would not respond to his grievances because Mr. Jordan only wanted to file a lawsuit. Pl.'s SMF ¶ 11. During the conversation, Warden Washington allegedly intervened and directed Ms. Olivares to arrange for Mr. Jordan to be medically evaluated. *Id.* ¶¶ 28-29.

On January 11, 2023, Mr. Jordan was evaluated by Dr. Gerald Valletta, a physician assigned to Garner CI, for his back pain. *Id.* ¶ 30; Defts.' SMF ¶¶ 23-24. He allegedly reported a sudden onset of lower back issues that "[had] been going on for 7-8 months" and stated that the pain involved a "sharp-dull burning-pressure." Declaration of Dr. Gerald Valletta ¶ 11, ECF No. 57-6 ("Valletta Decl."). While Dr. Valletta observed a subjective pain level of six out of ten, Mr. Jordan states that he reported a pain level of ten out of ten. Pl.'s SMF ¶ 31. Dr. Valletta hypothesized the issue was "[l]ikely muscular strain," ordered an x-ray of Mr. Jordan's spine, and prescribed him an anti-inflammatory medication. Defts.' SMF ¶ 30. Dr. Valletta allegedly counseled Mr. Jordan to avoid strenuous activity and told him to follow up through the sick call process as needed. *Id.* Upon reviewing the results of the x-ray examination, Dr. Valletta determined that Mr. Jordan was experiencing mild degenerative disc disease, but that no follow-

up appointment was necessary. *Id.* ¶¶ 34-35. Mr. Jordan alleges that the x-ray technician identified bone spurs on Mr. Jordan's lower spine "[a]nd more serious problems, that he could not fully confirm, in Plaintiff's lower spine, because of all the grey reflecting in the image of the x-rays[.]" Pl.'s SMF ¶ 37.

On April 3, 2023, Dr. Valletta examined Mr. Jordan, who continued to complain of pain. *Id.* ¶ 43; Defts.' SMF ¶ 37. While Dr. Valletta claims that Mr. Jordan stated no history of trauma or strain or history suggestive of an inflammatory disorder, Mr. Jordan alleges that he explained a history of injury and trauma from several motor vehicle accidents and a 2018 encounter with the police. *Id.*

On May 11, 2023, Mr. Jordan saw Dr. Frank Maletz, an in-house orthopedic specialist, who noted that Mr. Jordan had an "[e]xcellent work up and treatments to date." Defts.' SMF ¶ 38. Dr. Maletz allegedly diagnosed Mr. Jordan with severe spinal stenosis and a herniated disc and informed him that surgery was necessary to alleviate the pain. Pl.'s SMF ¶ 51.

On May 17, 2023, Mr. Jordan was housed in the restrictive housing unit ("RHU") due to repeated threats of self-harm, where he allegedly "suffered decomposing of his mental health after being denied the adequate [and] prompt unbiased care." Pl.'s SMF ¶ 66. Mr. Jordan alleges he was suffering from psychological stress, anxiety, and self-destructive thoughts. Pl.'s SMF ¶ 67. The mental health staff was notified, and Mr. Jordan was then transferred to the infirmary unit. *Id.* Cells in the infirmary unit are built to facilitate observation of the resident's mental health and to reduce access to materials to ensure the resident's safety. Defts.' SMF ¶¶ 43-44.

On May 18, 2023, Dr. Craig Burns, the Principal Psychiatrist at Garner CI, attempted to assess Mr. Jordan to determine whether continued placement in the infirmary unit was warranted, but was unable to do so because Mr. Jordan allegedly refused to wear the special

gown required for such examination. *Id.* ¶¶ 48-50. On May 19, 2023, Dr. Burns assessed Mr. Jordan, during which he complained of back pain. *Id.* ¶ 51. Dr. Burns then "contacted medical" and "arranged for Mr. Jordan to have access to legal work." *Id.*

Mr. Jordan alleges he was placed in a cell in the infirmary unit that was "filthy with feces, blood, bodily fluids, [and] filth[.]" Pl.'s SMF ¶ 69. Mr. Jordan alleges prison staff, including Dr. Burns, were notified but failed to do anything to rectify the allegedly inhumane conditions. *Id.* ¶¶ 71-73. The Defendants allege that Mr. Jordan did not complain about the conditions of his cell to any mental health professional staff. Defts.' SMF ¶ 52.

On May 19, 2023, Mr. Jordan was released from the infirmary unit and returned to the restrictive housing unit where he remained until leaving Garner CI on May 23, 2023. *Id.* ¶ 53.

### B. Procedural History

On February 20, 2024, Mr. Jordan filed a Complaint. *See* Compl., ECF No. 1.

On August 23, 2024, the Court issued an Initial Review Order dismissing Mr. Jordan's Complaint for failure to comply with Federal Rule of Civil Procedure 8. *See* Initial Review Order, ECF No. 8.

On August 26, 2024, Mr. Jordan filed an Amended Complaint. *See* Am. Compl., ECF No. 15.

On December 13, 2024, the Court issued an Initial Review Order severing and dismissing many of Mr. Jordan's claims, and allowing the following claims for damages against the Defendants in their individual capacities to proceed: (1) First Amendment retaliation against Ms. Olivares; (2) Eighth Amendment deliberate indifference to Mr. Jordan's medical needs against Ms. Olivares and Dr. Valletta; and (3) Eighth Amendment deliberate indifference to Mr. Jordan's mental health needs against Dr. Burns and LPC Caillin. *See* Initial Review Order, ECF No. 18.

On April 2, 2025, the Defendants sought leave of the Court to depose the Plaintiff, which the Court granted. Mot. to Take Deposition, ECF No. 31; Order Granting Mot. to Take Deposition, ECF No. 32.

On September 2, 2025, Ms. Olivares filed an Answer to Mr. Jordan's Amended Complaint. *See* Answer, ECF No. 36.

On November 7, 2025, the Defendants filed a motion to compel Mr. Jordan's response to discovery requests and his attendance at a deposition. Mot. to Compel, ECF No. 41.

On November 13, 2025, Mr. Jordan filed an objection. Obj. re Mot. to Compel, ECF No. 43.

On January 2, 2026, Mr. Jordan filed a motion for summary judgment. Pl.'s Mot.

On March 3, 2026, the Defendants filed a memorandum in opposition to Mr. Jordan's motion for summary judgment. Mem. in Opp., ECF No. 56 ("Defts.' Mem. in Opp."). The same day, the Defendants filed a cross motion for summary judgment. Defts.' Mot.

On March 19, 2026, Mr. Jordan filed a memorandum in opposition to the Defendants' motion for summary judgment. Mem. in Opp., ECF No. 62 ("Pl.'s Mem. in Opp.").

## II.    STANDARD OF REVIEW

### A.  Motion For Summary Judgment

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of

material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*,

387 U.S. 82, 87 (1967); and *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-01559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party on the issue for which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

### B.  Motion To Compel

Under Fed. R. Civ. P. 26(b)(1), the parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Court has broad discretion in deciding a motion to compel discovery. *Grand Cent. P'ship. Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999) ("We will not disturb a district court's ruling on a motion to compel discovery unless there is a clear showing of abuse of discretion." (internal quotation marks omitted)).

"Where a party has failed to answer an interrogatory, or has failed to produce documents, or has submitted responses to discovery requests that are evasive or incomplete, and the party opponent in good faith has attempted to resolve the party's failures without court intervention,

8

the party opponent may move to compel the party's response." *Sellitto-Taylor v. McLean Affiliates, Inc.,* No. 3:20-CV-00162 (CSH), 2021 WL 950323, at *2 (D. Conn. Mar. 12, 2021) (citing Fed. R. Civ. P. 37(a)). The "party resisting discovery bears the burden of showing why discovery should be denied." *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009).

### III.    DISCUSSION

There are three remaining claims: (1) First Amendment retaliation against Ms. Olivares; (2) Eighth Amendment deliberate indifference to Mr. Jordan's medical needs against Ms. Olivares and Dr. Valletta; and (3) Eighth Amendment deliberate indifference to Mr. Jordan's mental health needs against Dr. Burns.

Mr. Jordan argues that he is entitled to summary judgment on the three surviving claims.

First, he argues that Ms. Olivares retaliated against him for filing grievances for medical care by refusing to process them. Second, he argues that Ms. Olivares and Dr. Valletta deliberately denied and delayed his access to adequate medical care for his back condition in violation of the Eighth Amendment, and that the Defendants' status as medical professionals does not grant them immunity. Finally, Mr. Jordan argues that Dr. Burns provided deliberately indifferent mental health care due to the conditions of his cell in the infirmary unit.[2]

The Defendants argue that they are entitled to summary judgment on all claims for three reasons. First, they argue that Mr. Jordan failed to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Second, they argue that

---

[2] Mr. Jordan's motion also includes arguments sounding in the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* Because these claims were previously dismissed, the Court need not and does not address them here. *See* Initial Review Order, ECF No. 18.

undisputed material facts entitle them to judgment as a matter of law on the remaining claims.

Finally, the Defendants argue that they are entitled to qualified immunity.

The Court addresses each of the issues related to these arguments in turn.

### A.  The Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of whether the inmate may obtain the specific relief he desires through the administrative process, *Booth v. Churner*, 532 U.S. 731, 738 (2001). Additionally, plaintiffs are required to exhaust their administrative remedies for each claim asserted in federal court; any "unexhausted claim" within a complaint is subject to dismissal. *Ortiz v. McBride*, 380 F.3d 649, 657-58 (2d Cir. 2004).

The PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This means that the inmate must comply with all "procedural rules," including filing deadlines, required by the particular prison's grievance system. *Id.* at 90–91. "[U]ntimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (citing *Woodford*, 548 U.S. at 83–84).

The exhaustion requirement may be excused, however, when the remedy is not available in practice even if it is "officially on the books." *Ross v. Blake*, 578 U.S. 632, 642–43 (2016). The Supreme Court has identified three types of circumstances in which an administrative procedure is unavailable and, therefore, need not be exhausted: (1) "when (despite what

10

regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use;" and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015). Failure to exhaust administrative remedies is an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Thus, defendants "bear the initial burden of establishing . . . that a grievance process exists and applies to the underlying dispute." *Hubbs*, 788 F.3d at 59.

Mr. Jordan's Eighth Amendment claim against Dr. Burns is subject to the exhaustion procedures of A.D. 9.6 because it concerns the conditions of his cell in the infirmary unit. *See Silva v. Kilham*, No. 3:19-CV-01719 (VLB), 2020 WL 7388960, at *5 (D. Conn. Dec. 16, 2020) ("A plaintiff with claims concerning custody staff's deliberate indifference to his health and safety in his conditions of confinement is generally obligated to exhaust his administrative remedies under Administrative Directive 9.6.") (citing *Wilson v. McKenna*, 661 F. App'x 750, 753 (2d Cir. 2016)). Because Mr. Jordan's First Amendment retaliation claim against Ms. Olivares and his Eighth Amendment claim against Ms. Olivares and Dr. Valletta concern the provision of health care, they are subject to the exhaustion procedures of A.D. 8.9. *See* AD 8.9(1) (noting that HSARs "enable an inmate to seek formal review of any health care provision, practice, diagnosis or treatment").

11

### 1. Administrative Directive 9.6

"[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Bock*, 549 U.S. at 218. A plaintiff in Department of Corrections' ("DOC") custody who asserts claims based on correctional staff's deliberate indifference to his health and safety due to unconstitutional conditions of confinement generally must exhaust his remedies through the grievance procedures set forth in DOC Administrative Directive 9.6 ("A.D. 9.6"); *see also Riles v. Buchanan*, 656 F. App'x 577, 579 (2d Cir. 2016) (summary order) ("The Connecticut Department of Correction [] requires inmates to submit grievances in accordance with Administrative Directive 9.6[.]").

Before an inmate can file a grievance under A.D. 9.6, he must first seek "informal resolution." A.D. 9.6 § 6.a.i. The inmate must attempt to "resolve the issue verbally" and, if this effort is unsuccessful, must "submit a written request via form CN 9601." *Id.* If these informal resolution steps are unsuccessful, the inmate may file a Level 1 grievance using form CN 9602, which must be submitted within thirty calendar days after the occurrence or discovery of the cause of the grievance. A.D. 9.6 § 6.a.ii.4. The grievance must include documentation of the inmate's written request to resolve the matter informally or an explanation of why such documentation is not attached. *Id.* at § 6.a.ii.2. The Unit Administrator is required to respond in writing to a Level 1 grievance within thirty business days of receipt of the grievance. A.D. 9.6 § 6.b.i.3.

An inmate may appeal to Level 2 if the Unit Administrator either denies a Level 1 grievance or fails to respond to the grievance in a timely manner. A.D. 9.6 § 6.b.ii. When the Administrator denies a Level 1 grievance, the Level 2 appeal must be filed within five calendar days of the inmate's receipt of the Administrator's decision. *Id.* at § 6.b.ii.1. When the

Administrator fails to respond to a Level 1 grievance in a timely manner, the Level 2 appeal must be filed within sixty-five days of the date the Level 1 grievance was filed. *Id.* at § 6.b.ii.2.

Level 3 appeals are restricted to appeals of Level 2 decisions that challenge department policy or the integrity of the grievance procedure, or appeals to which there has been an untimely response by the District Administrator. A.D. 9.6 § 6.b.iii.1. An inmate must file a Level 3 grievance using form CN 9605 within five calendar days of the Level 2 denial, or, if the Level 3 form was submitted "as a result of an inmate not receiving a response to a CN 9604, Inmate Grievance Appeal Form – Level 2 within 30 business days, [it] must be filed within 65 calendar days of filing the CN 9604, Inmate Grievance Appeal Form – Level 2." A.D. 9.6 § 6.b.iii.2.

Mr. Jordan states that on May 20, 2023, he submitted a CN 9601 form to Dr. Burns regarding the conditions of his cell in the infirmary unit. Pl.'s SMF ¶¶ 74-75.

Dr. Burns attests that "[a]t no time during his confinement in [the infirmary unit] did Mr. Jordan complain about the conditions of his cell to any mental health professional, let alone [him]." Affidavit Decl. of Burns ¶ 19, ECF No. 57-7. The Defendants also argue that "assuming [Mr. Jordan] did file an inmate request on May 20, 2023 regarding conditions of his confinement, the complaint was moot in that Plaintiff was returned to restrictive housing. No action could be taken by anyone, let alone Defendant Burns, to address cell condition complaints and transfer him to another cell." Defts.' Mot. at 28 (internal citations omitted).

The Court disagrees.

Mr. Jordan has submitted his May 20, 2023 CN 9601 form addressed to Unit Manager Porlyo and Dr. Burns in which he alleges that "the conditions of the cell [were] inhumane with feces, blood, urine, and other bacteria[] . . ." Exhibit 2 to Pl.'s Mem. in Opp. at 124, ECF No. 62-2. The Defendants do not state knowledge of this CN 9601 form and only "assume" that Mr.

13

Jordan may have filed the now-included grievance. The Defendants include no records of DOC's response to his grievance, or any appeals taken thereafter.

"Because nonexhaustion is an affirmative defense, defendants bear the burden of proving that the plaintiff did not exhaust his administrative remedies and prisoner plaintiffs need not plead exhaustion with particularity." *Guarneri v. West*, 782 F. Supp. 2d 51, 59 (W.D.N.Y. 2011), *aff'd,* 495 F. App'x 142 (2d Cir. 2012) (internal citation and quotation marks omitted). Mr. Jordan has produced sufficient evidence to establish a genuine issue of material fact as to whether he exhausted his deliberate indifference claim against Dr. Burns. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).[3]

Accordingly, the Defendants' motion for summary judgment on Mr. Jordan's Eighth Amendment claim against Dr. Burns is denied without prejudice to renewal following Mr. Jordan's testimony and the close of discovery.

### 2.  Administrative Directive 8.9

The State of Connecticut DOC Administrative Directive 8.9 ("A.D. 8.9") contains administrative rules for filing Health Services Administrative Remedies ("HSAR") grievances, which "enable[s] an inmate to seek formal review of any health care provision, practice, diagnosis or treatment." AD 8.9(1). HSARs are limited to diagnosis/treatment and administrative issues. *See id.* 8.9(6)(a)(i)–(ii).

A.D. 8.9(6) sets forth the procedures for filing an HSAR. An HSAR that does not comply with the procedures is rejected, and the inmate is notified. *Id.* 8.9(6)(b)(i)(1)(a)–(b). Similar to A.D. 9.6, before an inmate can file a grievance he must first seek informal resolution, including

---

[3] The Defendants' argument that Mr. Jordan's complaint was moot once he was returned to restrictive housing ignores both the Defendants' responsibility to timely respond to properly filed CN 9601 forms and the fact that Mr. Jordan may nonetheless seek compensatory damages for the harm stemming from the alleged violation.

an attempt to resolve the issue verbally with a staff member. *Id.* 8.9(6)(b)(ii)(1)–(2). If the issue remains unresolved, the inmate must submit a CN 9601 form stating the problem, the action requested to remedy the issue, and the date and time of the attempt at verbal resolution. *Id.* 8.9(6)(b)(ii)(3). DOC is required to respond to the CN 9601 form within fifteen business days. *Id.* 8.9(6)(b)(ii)(7).

If the inmate is unsatisfied with the response from the CN 9601, he must file a Level 1 HSAR grievance using a CN 8901 form. *Id.* 8.9(6)(b)(iii)(1)–(2). The CN 8901 form must be accompanied by the previously filed CN 9601 form and response. *Id.* 8.9(6)(b)(iii)(2). If unable to provide the CN 9601 form and response with his CN 8901 form, the inmate must explain why. *Id.* 8.9(6)(b)(iii)(2)(a). The CN 8901 form and required documents "must be filed within 30 calendar days of the occurrence or discovery of the cause of or reason for the request for the Health Services Administrative Remedy." *Id.* 8.9(6)(b)(iii)(4).

Level 1 HSAR review consists of a Health Services staff member reviewing the CN 8901 form and documentation. *See id.* 8.9(6)(c)(i)(1). The CN 8901 form contains two checkboxes: "Diagnosis/Treatment" and "Administrative." *See* ECF No. 24-5 at 2. If the inmate checks the "Diagnosis/Treatment" box, he must "concisely explain the specific diagnosis or treatment decision and specify the date of diagnosis or treatment. The inmate shall explain how he or she is dissatisfied with the diagnosis and treatment, how he or she has been affected, and concisely state the resolution desired." A.D. 8.9(6)(c)(i)(1).

After reviewing the completed CN 8901 form, the HSAR coordinator must "consult with the provider who made the decision to determine what action, if any, should be taken." *Id.* 8.9(6)(c)(i)(2)(a). If the provider decides that the existing diagnosis or treatment is appropriate, the remedy shall be denied and not subject to further appeal. *Id.* But, if the provider determines

further evaluation is necessary, the provider may schedule a Health Services Review appointment. *Id.* 8.9(6)(c)(i)(2)(b).

An inmate may appeal a Level 1 HSAR disposition by filing a CN 8902 form "within five (5) calendar days of receipt of the Level 1 decision." *See id.* 8.9(6)(c)(iii)(1). The Regional Chief Operating Officer reviews Level 2 HSAR appeals and must issue a response within thirty business days. *Id.* 8.9(6)(c)(iii)(2)–(3). If the inmate does not receive a response within thirty days, he may file a Level 3 HSAR appeal "within 65 calendar days from the date that the initial CN 8901 ... was documented in the ... Health Service Administrative Remedies Log." *Id.* 8.9(6)(c)(iii)(4)(a). Level 2 HSAR review is "the final level of review of all remedies unless the appeal meets the requirements for a Level 3 review." *Id.* 8.9(6)(c)(iii)(5).

Level 3 HSAR reviews are "restricted to appeals of Level 2 decisions." *Id.* 8.9(6)(c)(iv)(1). Level 3 HSAR reviews must be filed within five days of receiving a Level 2 HSAR decision, *id.* 8.9(6)(c)(iv)(2), or within sixty-five days of filing a CN 8902 if no decision on the CN 8902 was received within thirty business days. *Id.* 8.9(6)(c)(iv)(2)(a). Level 3 HSAR reviews are conducted by the Chief Operating Officer and are "the final level of review of all remedies." *Id.* 8.9(6)(c)(iii)(3), (5).

While at Garner CI, Mr. Jordan filed nine HSARs, all of which were rejected or denied by Ms. Olivares or another prison administrator. *See* Decl. of Maria Losi at 16, ECF No. 57-8 ("Losi Decl."); *see also* Decl. of Laura Olivares ¶¶ 8-9, ECF No. 57-5; Losi Decl. at 23, 45 (rejecting HSAR 2868 and 2869 for incorrect filing as diagnosis and treatment decisions as opposed to administrative procedural issues); *id.* at 33, 60, 84 (rejecting HSAR 3193 and 3194 for attempting to appeal HSAR 2868, which was rejected and therefore not appealable, and for failure to attempt informal resolution); *id.* at 34 (rejecting HSAR 3216 for failure to attempt

16

informal resolution); *id.* at 112 (rejecting HSAR 3195 for failure to include proper documentation of informal resolution); *id.* at 122 (rejecting HSAR 3196 for failure to comply with procedural requirements); *id.* at 139 (rejecting HSAR 3197 for failure to include evidence of informal resolution); *id.* at 169 (denying HSAR 3620 noting that Mr. Jordan was seen by a medical professional who advised no follow-up appointment was necessary).

The Defendants argue that because Mr. Jordan's HSARs were rejected for failing to comply with the procedures outlined in A.D. 8.9 and were therefore neither investigated nor appealable, Mr. Jordan failed to exhaust his administrative remedies. Defts.' Mot. at 7-16. Mr. Jordan maintains that he has filed multiple requests and grievances on these matters, but to the extent that he did not exhaust, this failure should be excused because Ms. Olivares allegedly refused to process his HSARs. Pl.'s Mem. in Opp. at 3.

The Defendants argue that even if Ms. Olivares stated that she would not answer his grievances because he only wanted to file a lawsuit, exhaustion should not be excused because Mr. Jordan has not shown that administrative relief was unavailable to him. Defts.' Mot. at 15.

The Court agrees.

It is undisputed that because Mr. Jordan's HSARs were rejected, he did not exhaust his administrative remedies. *See Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("[U]ntimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement.") (citing *Woodford*, 548 U.S. at 83–84). The question is whether Ms. Olivares "thwart[ed] [Mr. Jordan] from taking advantage of a grievance process through machination, misrepresentation, or intimidation" when she allegedly stated she would not respond to Mr. Jordan's HSARs. *Ross v. Blake*, 578 U.S. 632, 643–44 (2016).

17

"[The Second Circuit] ha[s] held that 'the test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available.'" *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 311–12 (2d Cir. 2020) (quoting *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004) (internal quotation marks omitted)). Courts have excused exhaustion under the third *Ross* exception where "prison officials engaged in affirmative misconduct, such as threats or intimidation, to deter or impede a prisoner from filing a grievance." *Hill v. Donoghue*, No. 08-CV-1045 JS AKT, 2010 WL 3924858, at *1 (E.D.N.Y. Sept. 30, 2010). For example, where a prison official threatens to be or is physically violent towards a plaintiff in response to the plaintiff's filing of a grievance, exhaustion may be excused. *See, e.g., Baltas v. Maiga*, 119 F.4th 255, 267-68 (2d Cir. 2024) (overturning lower court decision granting defendant's summary judgment motion on exhaustion grounds where plaintiff showed, through sworn affidavits, that defendant threatened "we will get you out of the way," meaning "dead, son, dead" if he continued filing grievances, and that the defendant enlisted other inmates to stab him); *McCullough v. Burroughs,* 04–CV–3216, 2005 WL 3164248, at *2–4 (E.D.N.Y. Nov. 29, 2005) (excusing exhaustion where correctional officer responded to plaintiff's initial filing of a grievance by assaulting him and threatening that he would "get [the plaintiff] sooner or later"); *Hepworth v. Suffolk Cnty.,* 02–CV–6473, 2006 WL 2844408, at *4–7 (E.D.N.Y. Sept. 29, 2006) (excusing plaintiff from exhaustion requirement when he was threatened with an additional beating if he attempted to file another grievance form). And where a prison official denies a plaintiff's request for a grievance form or fails to deliver the proper forms, exhaustion is similarly excusable. *See Gayle v. Benware*, No. 08 CIV. 8017 RBM FM, 2009 WL 2223910, at *2 (S.D.N.Y. July 27, 2009) (Defendant allegedly denied the plaintiff's requests for "a grievance

18

form and access to a grievance representative" and allegedly failed "to mail [the plaintiff's informal] grievance").

Ms. Olivares' alleged statement does not rise to the level of affirmative misconduct necessary to excuse exhaustion under the third *Ross* exception. Ms. Olivares allegedly stated that she would not respond to Mr. Jordan's HSARs because she perceived he only wanted to file a lawsuit. Mr. Jordan has not alleged that Ms. Olivares threatened or intimidated him, nor has he alleged that she deterred or impeded him from filing further grievances by, for example, withholding grievance forms or failing to retrieve them from the HSAR box. Rather, in each of her rejections, Ms. Olivares indicated the exact procedural defect that led to the grievance's rejection. Mr. Jordan has not alleged that he lacked the opportunity to correct these deficiencies, and he continued to file grievances, albeit unsuccessfully, after each rejection. The prison's procedures do not become "unavailable" to Mr. Jordan simply because Ms. Olivares, as Health Services Administrative Remedies Coordinator, determined that Mr. Jordan's HSARs did not comply with the filing process described in A.D. 8.9. *Cf. Kellogg v. N.Y. State Dept. of Corr. Servs.,* No. 07–CV–2804, 2009 WL 2058560, at *3 (S.D.N.Y. July 15, 2009) (finding allegations that prison procedures were designed to prevent inmates from filing grievances raised a genuine issue as to whether administrative remedies were available to plaintiff).

Furthermore, during the January 10, 2023 interaction between Mr. Jordan and Ms. Olivares, Warden Washington allegedly directed Ms. Olivares to provide Mr. Jordan with a medical appointment, despite his failure to file a procedurally correct HSAR. On February 3, 2023, nearly a month after Ms. Olivares' alleged statement and after he received the medical attention he sought, Mr. Jordan filed another HSAR specifically against Ms. Olivares. Losi Decl.

19

at 168. This grievance was processed, and on March 3, 2023, it was denied by Ms. Caroline Sanders. *Id.* at 169. But Mr. Jordan did not appeal this denial. *Id.* at 16.

The undisputed facts show that Mr. Jordan continued to pursue the grievance procedures, obtained a denial, and nonetheless declined to appeal it. Because he remained able to seek administrative relief, and his failure to do so was due to his own actions, and not the affirmative misconduct of Ms. Olivares, no reasonable jury could conclude that the grievance procedures were unavailable to Mr. Jordan. *See Reynoso v. Swezey*, 238 F. App'x 660, 663 (2d Cir. 2007) (where "failure to appeal was not attributable to any threats or fear of retribution from prison staff," grievance procedures were not "unavailable" under *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004)); *see also McGaughy v. McDonald*, No. 919CV1114TJMTWD, 2020 WL 3488582, at *4 (N.D.N.Y. June 26, 2020), *report and recommendation adopted*, No. 919CV1114TJMTWD, 2020 WL 4500815 (N.D.N.Y. Aug. 5, 2020) ("Because Plaintiff has produced no evidence showing the administrative process was unavailable to him during the time within which he was required to appeal Grievance No. UST-614893-19 to CORC, the Court finds Plaintiff has not met his burden of demonstrating his administrative remedies were unavailable to him under *Ross* and concludes Plaintiff did not exhaust his Eighth Amendment excessive force claim against McDonald as required by the PLRA.").

Accordingly, the Defendants' motion for summary judgment will be granted with respect to Mr. Jordan's First Amendment retaliation claim against Ms. Olivares and his Eighth Amendment claim against Ms. Olivares and Dr. Valletta.

### B. The Eighth Amendment Deliberate Indifference Claim against Dr. Burns

"Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the

20

level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Snipes v. DeTella*, 95 F.3d 586, 590–91 (7th Cir. 1996)). Such action becomes an Eighth Amendment violation when an official both knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *See Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

A successful claim for deliberate indifference must satisfy both objective and subjective components of the test. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom., *Foote v. Hathaway*, 513 U.S. 1154 (1995). The objective component requires showing that the alleged deprivation is sufficiently serious. *Chance v. Armstrong*, 143 F.3d 698 (2d Cir. 1998) (quoting *Hathaway*, 37 F.3d at 66). A medical need is sufficiently serious if "a reasonable doctor or patient would find [the condition] important and worthy of comment," if the condition "significantly affects an individual's daily activities," and if the condition causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (internal quotation marks and citations omitted).

Under the subjective requirement, a defendant must have been actually aware that his or her actions or inactions would cause a substantial risk of harm to the plaintiff. *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994)). "Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Id.* "This approach comports best with the text of the [Eighth] Amendment . . . [which] does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Farmer*, 511 U.S. at 837; *see also Edwards v. Quiros*, 986 F.3d 187, 192 (2d Cir. 2021) (for conditions-of-confinement claim under Section 1983, a plaintiff "must

prove that objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities . . . [and] that subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety") (cleaned up).

Mr. Jordan argues that Dr. Burns was deliberately indifferent towards his mental health because he failed to take any action after Mr. Jordan informed him of the "deplorable conditions" of his cell in the infirmary unit, and such conditions "decomposed his physical and mental health." Pl.'s Mot. at 43, 34.

The Defendants concede that Mr. Jordan's mental health was sufficiently serious, requiring his placement in the infirmary unit. Defts.' Mem. in Opp. at 18-19. But they argue that Mr. Jordan has failed to create a genuine issue of material fact as to the subjective element of his claim, since he was properly monitored, met with mental health staff, and only complained about the conditions of the cell after leaving the unit. *Id.* at 19. Without the knowledge of Mr. Jordan's cell's conditions, the Defendants argue that Dr. Burns lacked the ability to transfer him to another cell.

The Court disagrees.

The Defendants have conceded that Mr. Jordan's suicidal ideation was a sufficiently serious medical condition to satisfy the objective prong of a deliberate indifference claim, and the Court agrees. *See Hathaway*, 37 F.3d at 66 (the standard contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain" (citation omitted)); *see also Young v. Choinski*, 15 F. Supp. 3d 194, 204 (D. Conn. 2014) (collecting cases deciding that suicidal ideation is sufficiently serious). The remaining issue is whether Dr. Burns acted with the requisite mental state to satisfy the subjective prong of the test.

22

Mr. Jordan claims that he was assigned to the infirmary unit following assessment of his "self-destructive" psychological state. Pl.'s SMF ¶ 67. He alleges that he "informed Mental Health Caillin" who "refuse[d] to rectify the matter" and also "informed Custody Capt. Hurdle and Deputy Warden, and other staff during their tour." *Id.* ¶ 71. Finally, he alleges that "Dr. Burns was made aware of the condition of the cell" and decided "to allow Plaintiff to remain in that inhumane environment" for "punitive reasons," namely Mr. Jordan's refusal to wear the medical gown. *Id.* ¶¶ 72-73. Dr. Burns, however, states that "[a]t no time during his confinement in IPM did Mr. Jordan complain about the conditions of his cell to any mental health professional, let alone [to Dr. Burns]," and that Dr. Burns' attempt to examine Mr. Jordan "was unsuccessful as Mr. Jordan refused to properly wear the [medical] gown when requested." Burns Decl. ¶¶ 15, 19.

Given the genuine issue of material fact regarding whether Dr. Burns knew of the cell's conditions and subsequently failed to move him, summary judgment cannot be granted as to this claim.[4]

But Mr. Jordan has failed to comply with the Court's orders on discovery in this case, including responding to the Defendants' production request and testifying at a deposition. *See* Order, ECF No. 32 (granting Defendants' motion to take Mr. Jordan's deposition); *see also* Fed.

---

[4] The Defendants argue they are entitled to summary judgment based on the doctrine of qualified immunity, which "shields a government official from liability for civil damages 'if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights.'" *Barnes v. Furman*, 629 F. App'x 52, 53–54 (2d Cir. 2015) (quoting *Mandell v. Cty. of Suffolk,* 316 F.3d 368, 385 (2d Cir. 2003)). Inmates have a clearly established right to be free from "unsanitary conditions in a prison cell," which "can, in egregious circumstances, rise to the level of cruel and unusual punishment." *Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013). Nonetheless, if Dr. Burns had no knowledge of the cell's conditions, "it would have been objectively reasonable for [him] to believe that his conduct did not violate [Mr. Jordan's] rights," and qualified immunity would shield him from liability. *Barnes*, 629 F. App'x at 53–54. Because the Court has found a genuine dispute of material fact concerning Dr. Burns' knowledge, it would be inappropriate to conclude at this stage that Dr. Burns is subject to qualified immunity.

R. Civ. P. 30(a). Mr. Jordan's failure to participate in discovery thus deprives the Defendants of evidence to which they are entitled under Federal Rule of Civil Procedure 26(b)(1), including evidence to support this motion for summary judgment.

Accordingly, the Defendants' motion for summary judgment is denied without prejudice with respect to Mr. Jordan's Eighth Amendment claim against Dr. Burns. The Defendants' motion to compel will be granted, and Mr. Jordan is ordered to respond to the Defendants' production request and sit for a deposition by June 26, 2026.

Failure to comply with these discovery obligations may result in the dismissal of this case. *See Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 303 (2d Cir. 2009) ("Agiwal's noncompliance, including his failure to appear at three scheduled depositions, amounted to 'sustained and willful intransigence in the face of repeated and explicit warnings from the court that the refusal to comply with court orders . . . would result in the dismissal of [the] action.'" (quoting *Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994))).

## IV.    CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment is **GRANTED in part and DENIED in part**, and Mr. Jordan's motion for summary judgment is **DENIED**. The Defendants' motion to compel is **GRANTED**.

The Defendants' motion for summary judgment is granted with respect to Mr. Jordan's First Amendment retaliation claim against Ms. Olivares and his Eighth Amendment claim against Ms. Olivares and Dr. Valletta. With respect to Mr. Jordan's remaining Eighth Amendment claim against Dr. Burns, the Defendants' motion is denied without prejudice to renewal following Mr. Jordan's testimony and the close of discovery.

24

The Court also grants the Defendants' motion to compel and orders that Mr. Jordan respond to the Defendants' production request and sit for a deposition by **June 26, 2026**.

Failure to comply with these discovery obligations may result in the dismissal of this case.

**SO ORDERED** at New Haven, Connecticut, this 15th day of May, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE